# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **MELISSA PEARSON, on behalf of the Estate of JAMES RAY TURNER, KACEY BURNS, as natural guardian and parent of JESSIE TURNER, a minor,**<br><br>Plaintiffs,<br><br>v.<br><br>**HAROLD DILLINGHAM and MARTEEL DILLINGHAM,**<br><br>Defendants. | Civil Action No. 7:16-CV-54 (HL) |

## ORDER

This case arises out of the untimely death of James Ray Turner. Defendant Harold Dillingham hired Turner in the summer of 2014 to perform odd jobs on the Dillingham's farm in Alapaha, Georgia. Turner died when the tractor he was operating overturned and pinned him in a body of water. Plaintiff Melissa Pearson, Turner's mother, brought this lawsuit on behalf of Turner's estate, along with Kacey Burns, as the parent of Jesse Turner, one of Turner's surviving children, against Defendants Harold and Marteel Dillingham to recover for the

loss of Turner's life. Plaintiffs allege that Turner's death is the direct result of Mr. Dillingham's failure to properly train Turner on the operation of the tractor.[1]

Before the Court is Defendants' Motion for Summary Judgment (Doc. 16). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, and with the benefit of oral argument, the Court determines that there are genuine issues of material fact that must be resolved by a jury. The Court accordingly **DENIES** Defendants' motion. Also before the Court is Plaintiffs' Motion to Exclude the Opinions of H. Horton McCurdy, Ph.D (Doc. 17) and Defendants' Motion to Exclude Plaintiffs' Expert Witness Burke Murph (Doc. 14). For the reasons discussed below, the Court **DENIES** Plaintiff's motion to exclude and **GRANTS** Defendants' motion to exclude.

I. **FACTUAL BACKGROUND**

The undisputed facts are as follows:

Around July 2014, Defendant Harold Dillingham ("Mr. Dillingham") hired Decedent James Ray Turner ("Turner") to pull pigweed from his property located at 1326 Open Door School Road, Alapaha, Berrien County, Georgia.[2] Once that

---

[1] In their Complaint, Plaintiffs raise additional claims for negligent maintenance of the tractor as well as failure to extricate Turner and to contact rescue officials in a timely manner. Plaintiffs have withdrawn those claims. (Doc. 24, p. 3). Accordingly, the only claim remaining before the Court relates to an alleged failure to train.

[2] Defendant Marteel Dillingham jointly owns the property with her husband. Other than her joint ownership of the premises where the accident occurred, there is no evidence that Mrs. Dillingham had any contact with Turner.

2

task was accomplished, Mr. Dillingham requested Turner complete other odd jobs. On October 20, 2014, the date of the accident, Mr. Dillingham instructed Turner to accompany James Frye ("Frye"), a long-time employee of Mr. Dillingham, to collect net wrap from one of Mr. Dillingham's fields. Mr. Dillingham told Frye to attach a trailer to a John Deer 2030 tractor and to drive the tractor out to the field.

Around 4:00 p.m., Turner informed Frye that he needed to use the restroom. Rather than handling his business outside, as was customary, Turner unhooked the trailer and set off on the tractor toward Mr. Dillingham's shop, which was approximately 1.2 miles away from the field where Turner and Frye were assigned to work for the day. Turner never returned to the field.

The last person to see Turner on October 20th was Tommy Clark, an acquaintance of Mr. Dillingham's who was on his way to make a delivery to a neighboring farm. Clark observed Turner in the field behind Mr. Dillingham's shop "sliding the tractor around, playing" somewhere around 4:30 p.m. (Doc. 16-10, p. 8; Doc. 16-11, p. 9). Turner pulled up alongside Clark's truck, and Clark asked Turner to help him unload something from his truck. Clark then told Turner, "[t]here's been a lot of people killed doing what you're doing. I said, you don't play on a tractor. It has a high ground clearance and, I said, it'll turn over on you. I said, please do not do that anymore." (Id.). Turner said, "okay," then got back on the tractor and headed in the opposite direction. (Id. at p. 9-10).

Clark proceeded up the hill to Mr. Dillingham's shop to rinse out the bed of his truck and to speak with Mr. Dillingham and his son Dave. Clark informed Mr. Dillingham that he had seen Turner engaging in horseplay on the tractor. About twenty minutes passed before Clark returned to his truck and started home. As he proceeded down the road, Clark saw the tractor overturned in the pond. He called to the Dillinghams, who immediately came to the scene. At first, no one saw Turner. Then, Mr. Turner noticed a tattooed arm that he identified as Turner's. Dave Dillingham called 911 at 6:11 p.m. The Dillinghams and Clark quickly worked to extract Turner from underneath the tractor, attaching a chain to the tractor and then using a lull to lift the tractor enough to pull Turner's body to the shore. According to the Dillinghams and Clark, Turner's body had already turned a purplish color, and he had no pulse.

Both the Berrien County Sheriff's Office and the Georgia State Patrol responded to the 911 call. Georgia State Trooper Rodney Harding took pictures of the scene. Trooper Harding observed "that there were roadway marks showing what appeared to be he had taken a right-hand turn too fast and, because of that, kind of pushed out of the curb and ran into the ditch, causing him to roll the tractor." (Doc. 16-11, p. 8). He also noted that the tractor was in high gear when it was removed from the water. Based on his experience and training investigating accidents, Trooper Harding deduced from the evidence that Turner was driving the tractor recklessly at the time of the accident. (Id. at p. 19).

Turner's body was taken from the scene of the accident to the coroner's office. Deputy Harding was present when the coroner drew blood from the corpse. Trooper Harding preserved the evidence and submitted it to the Georgia Bureau of Investigation ("GBI") for drug and alcohol testing. Trooper Harding also preserved evidence removed from Turner's pockets, including a pack of cigarettes, some rolling papers, a lighter, a handful of peppermints, and a small bag containing what appeared to be marijuana. (Id. at 11-12). The GBI lab later tested the blood obtained from Turner. The blood alcohol test revealed that Turner had an ethyl alcohol result by gas chromatography of 0.184 grams per 100 ml. The toxicology test showed that Turner was positive for marijuana.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254–55. The court may not, however, make credibility determinations or weigh the

evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiffs cannot establish the basic elements of their failure to train claim. According to Defendants, they had no duty to train Turner on the operation of the tractor he was driving at the time of his death since Defendants had no expectation that Turner would be driving the tractor. Additionally, Defendants aver that summary judgment in their favor is appropriate because Turner, who allegedly was driving the tractor recklessly and while intoxicated, voluntarily exposed himself to the risks associated with his conduct or, alternatively, because Turner's negligence exceed Defendants'.

### A. Failure to Train

To establish a claim for negligence, a plaintiff must demonstrate "(1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage from the breach." Hodges v. Putzel Elec. Contractors, Inc., 260 Ga. App. 590, 594 (2003). "It is . . . axiomatic that the mere fact that an accident happened and the plaintiff may have sustained injuries or damages affords no basis for recovery against a particular defendant unless the

plaintiff carries the burden of proof and shows that such accident and damages were caused by specific acts of negligence on the part of that defendant." McQuiaig v. Tarrant, 262 Ga. App. 236, 237 (2004) (citing Cromer v. Hodges, 216 Ga. App. 548, 549(1)(1995)).

"Whether or not a legal duty exists is a question of law for the court." Murray v. Georgia Dept. of Transp., 284 Ga. App. 263, 272 (2007) (citing First Fed. Savings Bank, etc. v. Fretthold, 195 Ga. App. 482, 485 (1990). A legal duty sufficient to support liability for negligence is "either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts." Id. (citation and punctuation omitted).

Here, Plaintiffs argue that Defendants breached their duty to properly train Turner on the use of the tractor and the risks associated with driving the tractor. It is a well-settled principle of law that an employer is obligated to train an inexperienced employee in the operation of any equipment and to establish rules and regulations for the use of that machinery to promote the safety of his employees. Moore v. Dublin Cotton Mills, 127 Ga. 609, 617 (1907). Defendants admit that they never inquired about Turner's experience operating a tractor. (Doc. 30, ¶ 5). Defendants further admit that they never instructed Turner how to drive the tractor. (Id. at ¶¶ 6, 8-9). Plaintiffs have therefore established the first two elements of their negligence claim.

Still, in order to recover, Plaintiffs must prove that Defendants' breach of the duty to train was both the cause in fact and the proximate cause of the injury. See Mayor and City Council of City of Richmond Hill v. Maia, 336 Ga. App. 555, 561 (2016), vacated in part, 342 Ga. App. 887 (2017), (citing Atlanta Obstetrics & Gynecology Group v. Coleman, 260 Ga. 569 (1990)). "Questions of negligence and proximate cause are peculiarly questions for the jury except in clear, plain, palpable and undisputed cases. Only in the rare case where there is an admission of liability or an indisputable fact situation that clearly establishes liability, should summary judgment be granted." Gulf Life Ins. Co. v. Folsom, 256 Ga. 400, 404 (1986) (citations and punctuation omitted).

The facts of this case do not clearly establish liability on the part of Defendants. While Mr. Dillingham has admitted that he did not question Turner about his experience driving a tractor and that he did not offer Turner any instruction on the operation of the tractor, questions remain regarding whether the failure to provide Turner specific guidance on the use of the tractor led to the accident or whether Turner's own negligence ended in his demise. Accordingly, summary judgement is not appropriate.

### B.     Assumption of the Risk

Defendants assert that even if Plaintiffs could establish the necessary elements of their negligence claims, Turner assumed the risk of injury when he

drove the tractor recklessly and while under the influence of alcohol and marijuana. An assumption of the risk defense

> is not ordinarily susceptible of summary adjudication, and summary judgment is appropriate only where the evidence is plain, palpable, and indisputable. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.

Bills v. Lowery, 286 Ga. App. 301, 304(3) (2007) (citations and punctuation omitted). The defendant must show "both actual and subjective knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes the injury." Kroger Co. v. Williams, 257 Ga. App. 833, 835 (2002).

Defendants suggest that the facts in this case are clear and palpable that Turner assumed the risk of his behavior. The Court disagrees. While the evidence is undisputed that prior to the accident, Clark witnessed Turner horse playing on the tractor in the field and admonished Turner, there is no clear evidence that Turner was driving in the same reckless manner at the time the tractor left the road and overturned in the pond. Likewise, the evidence is not clear that Turner appreciated the danger to which he was exposed by taking a right hand turn while in high gear. Plaintiffs have also raised questions regarding

the validity of the blood alcohol and drug test results, particularly in light of the fact that no person observed Turner to be intoxicated on the date of the accident. The Court therefore cannot determine as a matter of law that Turner had actual or subjective knowledge of the particular risk he faced.

    **C.    Contributory Negligence**

Defendants further argue that they are entitled to summary judgment because, even if Defendants were negligent, Turner's negligence exceeded their own, thereby barring recovery. The question of a plaintiff's comparative negligence generally is "not susceptible to summary adjudication but should be resolved by trial in the ordinary manner." Sutton v. Justiss, 290 Ga. App. 565, 567 (2008) (citation and punctuation omitted). But, even where the plaintiff's negligence does contribute to the plaintiff's injuries, "it would be for the jury to apportion fault between the parties." Id. (citing Bridges Farms v. Blue, 267 Ga. 505 (1997)).

**IV.    DAUBERT MOTIONS**

A party relying on the testimony of a proposed expert witness bears the burden of laying, by a preponderance of the evidence, a foundation for the admission of its expert's testimony. Corvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)). Whether certain opinions may be offered as expert testimony is determined by the standard stated in Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

As the Supreme Court clarified in Daubert v. Merrell Dow Pharmaceuticals, a trial court must act as a "gatekeeper" and test the reliability and relevancy of the proposed expert's opinions before determining whether they can be admitted as expert testimony. 509 U.S. 579, 589–93 (1993). The trial judge must undertake a "rigorous three-part inquiry" and decide whether: (1) a proposed expert is qualified to competently testify concerning his opinions; (2) his methodology is sufficiently reliable; and (3) his testimony would assist the jury, through the application of scientific, specialized, or technical expertise, to determine a fact in issue or understand the evidence. United States v. Fazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

"A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001) (internal quotation and citation omitted). Rather the objective of the gatekeeping requirement "is to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 152 (1999). And the district court has "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999).

### A. Plaintiffs' Motion to Exclude H. Horton McCurdy, Ph.D

Plaintiffs filed a motion to exclude the opinions of H. Horton McCurdy, Ph.D. Defendants hired Dr. McCurdy as a toxicology consultant to review and to interpret the results of the drug and alcohol tests completed by the GBI. Plaintiffs contend that Dr. McCurdy's opinions should be excluded because (1) he did not review Turner's medical records or the pleadings or depositions produced in this case; (2) he did not interview any of the witnesses or the first responders; (3) he did not verify the validity of the testing procedures; (4) he cannot testify as to the degree of impairment experienced by Turner.

At the hearing held on December 14, 2017, Plaintiffs conceded that the concerns raised in their Daubert motion may be more appropriately raised on cross-examination. The Court concurs. Plaintiffs' motion to exclude the testimony of Dr. McCurdy is accordingly **DENIED**.

## B. Defendants' Motion to Exclude Burke Murph

Defendants move to exclude the expert opinion of Burke Murph. Murph is the principal of Georgia Water and Environmental Services, LLC. He currently works in the fields of agricultural engineering, civil and municipal engineering, and environmental management. He is also an erosion sedimentation control inspector and an erosion sedimentation control designer approved by the Georgia Soil and Water Conservation Commission. He considers himself to be an expert in "water resource engineering." (Doc. 26-1, p. 16-17). Plaintiffs seek to introduce Murph's testimony to explain the conditions of the scene of the accident and to define any technical terms associated with the pond where the accident occurred. Plaintiffs point out that Murph has not been identified to offer any opinion relating to causation or liability in this case.

Defendants argue that Murph's testimony should be excluded because it is not relevant to the sole remaining issue regarding whether Defendants failed to properly train Turner on the operation of the tractor. Murph prepared an export report detailing certain features of the two bodies of water near where the subject accident occurred. Specifically, Murph measured the depth of the water in the pond where the tractor overturned and stated that there may have been an impediment to the free flow of water into the smaller pond, which could have caused a higher water level. Murph took these measurements on July 22, 2015,

nine months after Turner's accident, and gives no opinion relating to the conditions of the pond on the actual date in question.

One of the primary requirements for the admission of expert testimony is relevance. "Expert testimony which does not relate to any issue in the case is not relevant, and, ergo, non-helpful." Daubert, 509 U.S. at 579 (1993). When an expert opinion does not have a "valid scientific connection to the pertinent inquiry, it should be excluded because there is no 'fit.'" Boca Raton Cmty, Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d1227, 1232 (11th Cor. 2009) (citation and quotation omitted). Additionally, expert testimony "is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63 (citation omitted).

Plaintiffs have failed to explain how Murph's testimony relates to their sole remaining failure to train claim. To the extent that Plaintiffs intend to introduce Murph to describe the geography of the scene of the accident, the jury can glean that same information through the examination of the photographs taken on the day of the accident. Where the pond lay in relation to the road is not beyond the understanding of the jury. Accordingly, the Court **GRANTS** Defendants' motion.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 16). The Court **DENIES** Plaintiffs' Motion to Exclude the Opinions of H. Horton McCurdy, Ph.D (Doc. 17) and **GRANTS** Defendants' Motion to Exclude Plaintiffs' Expert Witness Burke Murph (Doc. 14).

This case shall be placed on the Court's next available trial calendar.

**SO ORDERED** this 28th day of December, 2017.

>             *s/ Hugh Lawson*
>             **HUGH LAWSON, SENIOR JUDGE**

aks